**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BILLINGS DIVISION**

| | |
|---|---|
| DIANA & KENNETH MERIDETH,<br><br>    Plaintiffs,<br>vs.<br><br>BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, a foreign Corporation, f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation,<br><br>    Defendants. | CV-08-30-BLG-RFC-CSO<br><br>**ORDER DENYING DEFENDANT BNSF'S MOTION FOR JOINDER OF THE STATE OF MONTANA** |

Plaintiffs Diana and Kenneth Merideth ("Merideths") initiated this action alleging that Defendants Burlington Northern & Santa Fe Railway Company and Burlington Northern Railroad Company ("BNSF") contaminated their property in Livingston, Montana.  First Am. Cmplt. (Court's Doc. No. 19) at ¶¶ 9-15.  The Merideths allege that BNSF's operations at its former Livingston railyard released diesel, oil, and other hydrocarbons into the environment that ultimately contaminated the groundwater, soil, and air on the Merideths' property.  Id.  While the Merideths seek compensatory and punitive damages, they also seek, relevant to the motion before the Court, restoration damages so that they may "have their property restored to the condition which existed prior to its contamination" by BNSF.  Id. at ¶ 38; see also id. (Count VII, ¶¶ 36-39).

Now pending before the Court are BNSF's Motion for Joinder of the State of

-1-

Montana (Court's Doc. No. 24) and Plaintiffs' Motion for Hearing on BNSF's Motion to Join the State of Montana (Court's Doc. No. 32). By Order (Court's Doc. No. 26) filed August 20, 2008, the Court granted the State of Montana's unopposed motion to intervene for the limited purpose of responding to BNSF's joinder motion. Having reviewed the record, together with the parties' and the State's arguments in support of their respective positions, the Court will deny BNSF's motion.

I.   BACKGROUND[1]

On December 27, 1988, the State of Montana (the "State") filed a complaint against BNSF in this Court. See State of Montana v. BNSF Railway Company, CV-88-141-H-DWM-RKS. The State asserted various claims under federal and state law for contamination arising from BNSF's railroad maintenance and fueling facility in Livingston. The State sought response costs, remedial action, declaratory and injunctive relief, penalties, and natural resource damages. On April 27, 1990, this Court entered a Modified Partial Consent Decree.

On September 27, 2007, the City of Livingston and some Livingston residents filed an action against BNSF in Montana state court. See City of Livingston, et al. v. BNSF Railroad Co., et al., Cause No. DV-07-141 (Mont. 6th Dist. Ct.). The plaintiffs there allege that BNSF contaminated their property with diesel fuel, chlorinated solvents, and other substances originating from the BNSF railroad maintenance and

---

[1] This background statement is from the State's Brief in Opposition (Court's Doc. No. 28) to BNSF's motion and is repeated in the Merideths' Response Brief in Opposition (Court's Doc. No. 29) to BNSF's motion. BNSF has not disputed the contents of this background statement.

fueling facility in Livingston. The plaintiffs allege negligence, public and private nuisance, strict liability, trespass, wrongful occupation of plaintiffs' property, constructive fraud-deceit, and misconduct warranting punitive damages. The plaintiffs seek restoration and other damages for the alleged injuries to their private property.

On December 19, 2007, BNSF filed a motion in the state court action under Rules 19(a) and 21, Mont. R. Civ. P., to join the State as a "party whose presence is necessary for this Court to provide complete relief to Plaintiffs and BNSF." State's Op. Br. at Ex. 3. BNSF based its joinder motion in that case on the fact that the State, through its Department of Environmental Quality ("DEQ"), must give written permission to the plaintiffs in the state court action for any cleanup work the plaintiffs might perform using the damages they might eventually receive in that case. On February 13, 2008, state District Judge Nels Swandal denied BNSF's joinder motion. Id. at Ex. 1.

## II.     THE PARTIES' AND THE STATE'S ARGUMENTS

BNSF seeks to join the State under Rule 19, Fed. R. Civ. P.,[2] generally arguing that the State's involvement is "necessary" to "accord complete relief among existing parties" on Plaintiffs' restoration damages claim. BNSF's Opening Br. at 2. BNSF argues that: (1) the State owns the groundwater beneath Plaintiffs' land; (2) under Montana law, the State must give Plaintiffs its consent for any work Plaintiffs might perform to restore the groundwater using any damages Plaintiffs might receive in this case; and (3) the State's "consent and involvement," therefore, is necessary for the Court to

---

[2]All references to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

"order the Plaintiffs to execute a restoration plan that involves the groundwater." Id. at 4, 5.

More specifically, BNSF argues that Plaintiffs seek "restoration damages," a claim premised on the Montana Supreme Court's decision in Sunburst Sch. Dist. No. 2 v. Texaco, Inc., 165 P.3d 1079 (Mont. 2007) ("Sunburst"). In Sunburst, BNSF argues, the supreme court held

> for the first time in Montana, that "restoration damages" may be awarded to private landowners for purposes of remediating residential property and "restoring" those properties to their pre-contamination condition, even if the restoration cost exceeds any diminution in property value. To recover "restoration damages," the Plaintiffs must demonstrate that those damages "actually will be used to repair the damaged property."

Id. at 3.

To meet their burden, BNSF argues, "Plaintiffs must present a defensible restoration plan to support their claim for restoration damages ... [that] must inevitably encompass restoration of the State's groundwater. Thus the development of that plan and discovery surrounding that plan requires the State's presence in the case now." Id. at 5. Finally, BNSF argues, if the State is not joined as a necessary party, both Plaintiffs and BNSF "will be forced to gain access to discovery and data through cumbersome third party procedures when in fact, the State is a necessary party under any circumstances." Id.

In response, the State resists BNSF's attempt at involuntary joinder for four reasons. First, the State argues that it cannot be joined because, as a sovereign entity, it is immune from suit in federal court under the Eleventh Amendment to the U.S.

-4-

Constitution. State's Resp. at 2, 4-8.

Second, the State argues that its joinder would destroy diversity of citizenship. Thus, the State argues, its joinder would deprive the Court of subject matter jurisdiction. Id. at 2, 9-11.

Third, the State argues that a Montana state court already has determined in a similar case that requiring the State's consent or permission to conduct restoration does not make the State a necessary party. Thus, the State argues, collateral estoppel or issue preclusion prevents BNSF from relitigating an issue that the state court already has adjudicated. Id. at 2, 11-13.

Fourth, the State argues that it is not a necessary party under Rule 19. It argues that, even though "BNSF is correct that the Plaintiffs in this action must actually use any 'restoration damages' to repair their own private real property" under Sunburst, this holding does not make the State a necessary party because the Court still can accord complete relief between BNSF and Plaintiffs without the State's presence in the case as a party. Id. at 2, 13-16.

Plaintiffs also oppose BNSF's motion. First, they join in the State's argument that the Eleventh Amendment prohibits joinder. Pltfs' Resp. at 2, 6. Second, they join in the State's argument that the State's joinder would destroy the Court's diversity jurisdiction. Id.

Third, like the State, Plaintiffs argue that Judge Swandal's order, discussed supra, together with the supreme court's decision in Sunburst, show that the State's

-5-

joinder is not necessary to allow this Court to afford complete relief. Plaintiffs argue that "this Court does not need the State of Montana's permission or consent to award monetary damages to Plaintiffs for restoration costs advanced to clean up their property and restore their groundwater that has been contaminated by BNSF." Id. at 9. Plaintiffs further argue that "BNSF's contention that the State of Montana must approve or consent to any judgment against BNSF is simply wrong and contrary to Montana law." Id. at 10.

Finally, Plaintiffs argue that BNSF is estopped from joining the State in this action because Judge Swandal in a similar state court case recently denied BNSF's motion to join the State based on the same legal argument. Id. at 3, 11-14.

III. DISCUSSION

The Court first must address whether the State may avoid this Court's jurisdiction by invoking Eleventh Amendment immunity before addressing Rule 19 issues. See Wilbur v. Locke, 423 F.3d 1101, 1106-07 (9th Cir. 2005) (citations omitted) (concluding that "jurisdictional issues should be decided before reaching the Rule 19 issue").

The Eleventh Amendment to the U.S. Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

The Ninth Circuit recently reaffirmed that "[t]he Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private

-6-

parties against unconsenting States." Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008) (citing Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996)). The Eleventh Amendment also has been construed to bar suits against a state by its own citizens. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (noting that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."). Here, if the Eleventh Amendment deprives this Court of jurisdiction over the State in this action, the Court must deny BNSF's motion to join the State.

Having reviewed the parties' and the State's arguments, the Court concludes that the State is immune from suit under the Eleventh Amendment. First, the State has not consented to involvement in this action and, in fact, has resisted BNSF's motion for joinder. See State's Resp. at 1-2. BNSF has presented neither evidence nor argument that the State has consented. Second, BNSF has not argued that Congress has somehow abrogated the State's sovereign immunity. Third, BNSF has not argued that the State may be joined here under Ex parte Young, 209 U.S. 123, 156 (1908) (allowing a suit against a state official when the suit seeks only prospective injunctive relief to end a continuing violation of federal law). Thus, the Court concludes that Eleventh Amendment immunity deprives this Court of jurisdiction over the State in this action, and BNSF's motion for joinder must be denied.

In reaching the foregoing conclusion, the Court is unpersuaded by BNSF's arguments supporting joinder. Without citation to any authority, BNSF argues in its

opening brief that "[t]he Eleventh Amendment is not implicated" here.  BNSF's Opening Br. at 5, n.1.  It argues that because it "will not seek to assert any direct claims against the State treasury[,]" the State cannot rely on Eleventh Amendment immunity to avoid joinder in this action.  Id.  It repeats this argument in its reply brief relying on the Ninth Circuit's decision in Excess and Casualty Reinsurance Ass'n v. Insurance Commissioner of the State of California, 656 F.2d 491, 497-98 (9th Cir. 1981) ("Excess").  See Deft. BNSF's Reply in Support of its Motion to Join the State of Montana ("BNSF's Reply") (Court's Doc. No. 32) at 2-3, 7-9.  The Court rejects BNSF's argument for two principal reasons.

First, in Seminole Tribe, the U.S. Supreme Court rejected BNSF's argument stating

> we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.  See, e.g., Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought"). . . .  The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury," Hess v. Port Authority Trans-Hudson Corporation, 513 U.S. 30, 38 (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," Puerto Rico Aqueduct and Sewer Authority [v. Metcalf & Eddy, Inc., 506 U.S. 139,] 146 [(1993)].

517 U.S. at 58.

Under Seminole Tribe, the relief sought in the instant action is irrelevant.  Thus, BNSF's argument that Eleventh Amendment immunity is not implicated since BNSF "will not seek to assert any direct claims against the State treasury[,]" is unpersuasive.

Second, BNSF's reliance on Excess is misplaced. The Ninth Circuit decided Excess before the Supreme Court issued Seminole Tribe. Also, in Excess, the Ninth Circuit sought to determine whether the State of Florida was the real party in interest in its capacity as a receiver by considering the "essential nature and effect of the proceeding," and by trying to determine whether the action sought to compel or forbid any action by the state. Excess, 656 F.2d at 497. The Court determined that Florida was not the real party in interest, and thus did not have sovereign immunity, because the action sought neither damages from the Florida Treasury nor to compel or forbid any action by the State of Florida. Id.

Here, while the Merideths and BNSF, at this juncture, do not seek to assert a claim for any damages from the State, relief sought is irrelevant for purposes of determining applicability of Eleventh Amendment sovereign immunity. Seminole Tribe, 517 U.S. at 58. Also, in attempting to join the State to this action, BNSF does seek to compel some action by the State. In its Opening Brief, BNSF argues that the State's joinder is necessary so that the Merideths and BNSF will not "be forced to gain access to discovery and data through cumbersome third party procedures" but, presumably, will be able to secure that discovery and data from the State through the State's involvement in this case as a party. This process, which may be less cumbersome for BNSF, likely would be more cumbersome for the State. Thus, the situation here with respect to the State's potential involvement as a party is distinguishable from the State

of Florida's involvement in Excess.[3]

The case at hand most closely resembles Thomas v. FAG Bearings Corp., 50 F.3d 502 (8th Cir. 1995). In Thomas, a case with a factual posture very similar to that of this case, the Eighth Circuit concluded that Missouri's Department of Natural Resources ("MDNR") could not be involuntarily joined because it enjoyed Eleventh Amendment immunity. In so concluding, the court, thoroughly examining Eleventh Amendment jurisprudence, explained:

> Involuntary joinder will compel MDNR to act by forcing it to prosecute FAG at a time and place dictated by the federal courts. This disrespect for state autonomy in decision-making is precisely what the Eleventh Amendment was intended to avoid. Indeed, "[t]he very object and purpose of the Eleventh Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."
>
> Permitting coercive joinder also undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook. Involuntary joinder diminishes state sovereignty by permitting FAG to unilaterally waive MDNR's Eleventh Amendment immunity. As a general matter, only unmistakable and explicit waiver by the state itself qualifies as a waiver of Eleventh Amendment immunity.
>
> FAG contends that this unilateral waiver does not trigger state sovereignty ramifications because the high waiver standard only applies when parties directly assert claims against the state. We do not find this argument persuasive. The cases applying the strict waiver standard focus on the Eleventh Amendment's respect for state autonomy, and not on the procedural status of a case. Thus, concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation.

---

[3]Also, in the joinder context, a party is not "necessary" for Rule 19 purposes merely because the existing parties need to obtain evidence from it. See Johnson v. Smithsonian Inst., 189 F.3d 180, 188-89 (2d Cir. 1999) (citing cases).

-10-

> \*   \*   \*
>
> Finally, viewing the Eleventh Amendment as inapplicable in joinder decisions demonstrates a fundamental misunderstanding of the Eleventh Amendment's role in the federal system.  The Eleventh Amendment is the constant undercurrent for all state interactions in federal courts.  It may be circumvented by waiver, abrogation, or a suit against state officials, but federal courts cannot simply deem a state's Eleventh Amendment defense inapplicable.

Thomas, 50 F.3d at 505-06 (citations omitted).

The Court finds the Eighth Circuit's rationale in Thomas persuasive here.  Having concluded that Eleventh Amendment immunity deprives this Court of jurisdiction over the State and that, therefore, BNSF's motion for joinder must be denied, the Court need not address the State's and the Merideths' other grounds urging denial of BNSF's motion.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that BNSF's Motion for Joinder of the State of Montana (Court's Doc. No. 24) is DENIED and Plaintiffs' Motion for Hearing on BNSF's Motion to Join the State of Montana (Court's Doc. No. 32) is MOOT.

DATED this 10th day of October, 2008.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge