IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| DAVE BURLEY and JEANNIE BURLEY, | CV-07-147-BLG-RFC-CSO |
| Plaintiffs, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON BNSF's MOTION TO DISMISS FOR LACK OF JURISDICTION BASED ON PRE-ENFORCEMENT REVIEW |
| BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, a foreign corporation, f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, | |
| Defendants. | |
| DIANA AND KENNETH MERIDETH, | CV-08-30-BLG-RFC-CSO |
| Plaintiffs, | |
| vs. | |
| BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, a foreign corporation, f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, | |
| Defendants. | |

DANA NELSON,                                    CV-07-148-BLG-RFC-CSO

Plaintiff,

vs.

BURLINGTON NORTHERN &
SANTA FE RAILWAY
COMPANY, a foreign corporation,
f/k/a BURLINGTON NORTHERN
RAILROAD COMPANY, a
Delaware Corporation,

Defendants.

Plaintiffs initiated these actions alleging that Defendants

Burlington Northern & Santa Fe Railway Company and Burlington

Northern Railroad Company ("BNSF") contaminated Plaintiffs' property

in Livingston, Montana.  Plaintiffs  allege that BNSF's operations at its

former Livingston rail yard ("Livingston site") released diesel, oil, and

other hydrocarbons into the environment that ultimately contaminated

the groundwater, soil, and air on the Plaintiffs' property.[1]  Id.  They seek

compensatory, punitive, and restoration damages.

---

[1]See Burley v. BNSF, CV 07-147-BLG-RFC-CSO ("Burley"), Am.
Cmplt. (Court Doc. 19) at ¶¶ 9-15; Meredith v. BNSF, CV 08-30-BLG-
RFC-CSO ("Meredith"), Am. Cmplt. (Court Doc. 19) at ¶¶ 9-15; and
Nelson v. BNSF, CV 07-148-BLG-RFC-CSO ("Nelson"), Am. Cmplt.
(Court Doc. 16) at ¶¶ 9-15.

BNSF moves for partial dismissal under Rules 12(b)(1) and 12(h)(3).[2]  BNSF also requests a hearing on the motion.  For the reasons discussed below, the Court recommends that BNSF's motion be denied. Also, the Court concludes that a hearing is not necessary for resolution of the instant motions because BNSF has been given the opportunity through briefing to present its arguments.[3]  Thus, the Court denies BNSF's request for a hearing.

I.      BACKGROUND

The Court and parties are familiar these matters' factual and procedural backgrounds.  Also, the background of each case is detailed in its record.  Thus, the Court will not repeat the background here except as necessary to explain this ruling.

---

[2]References to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3]Rule 12(i) provides that a defense under Rule 12(b)(1) made by motion "must be heard and decided before trial unless the court orders a deferral until trial."  Generally, however, a movant is not entitled to oral argument or a hearing on the motion.  Rather, whether to permit argument or a hearing is within the court's discretion.  See Greene v. WCI Holdings Corp., 136 F.3d 313, 316 (2d Cir. 1998) ("Every circuit to consider the issue has determined that the 'hearing' requirements of Rule 12 . . . do not mean that an oral hearing is necessary, but only require that the party be given the opportunity to present its views to the court") (citing cases); see also Pueschel v. U.S., 369 F.3d 345, 354 (4th Cir. 2004).

## II.   PARTIES' ARGUMENTS

BNSF argues that Plaintiffs' claims for restoration damages must be dismissed because the Court lacks subject matter jurisdiction. BNSF's Br. in Support of Partial Mtn. to Dismiss (Court Doc. 119) at 4.[4] In support of its motion, BNSF argues as follows:

BNSF presently is conducting remedial cleanup at the Livingston site under a modified partial consent decree ("Decree") entered in State of Montana v. BNSF Railway Company, CV-88-141-H-DWM-RKS. The Decree charged Montana's Department of Environmental Quality ("DEQ") with selecting a remedy for the site, as contemplated in Montana's Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), MCA §§ 75-10-701, et seq. DEQ selected the remedy in 2001.

The remedy is now being implemented under the Decree, a DEQ issued record of decision ("ROD"), and a DEQ statement of work ("SOW"). "[U]nder DEQ's direction, [BNSF] is legally bound by the Decree to implement the authorized remedy, which set specific clean-up

---

[4]Page numbers herein refer to the number reflected on the Court's electronic filing system.

levels." Plaintiffs, through their restoration damages claims, seek "to implement a wholly distinct remedy at the same location." Id.

The Court lacks subject matter jurisdiction to hear these claims because: (1) the Decree and DEQ-issued SOW are "orders" under Section 711(b) of CECRA, Montana's remediation implementation statute; (2) Plaintiffs' claims for restoration damages improperly "challenge the cleanup currently ongoing pursuant to the Decree and DEQ order requiring BNSF to take remedial action"; (3) CECRA allows a court to review an order issued under Section 711 of CECRA only under the limited situations set forth in MCA § 75-10-711(6); (4) none of the Section 711(6) situations under which a court may review a Section 711 order apply to Plaintiffs' restoration demands here; (5) Section 711 of CECRA is patterned after Section 113(h) of the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), which prohibits review of orders relating to remedial action so that sites are cleaned up swiftly without the burden of collateral lawsuits; and (6) Plaintiffs' restoration damages demands improperly seek review of CECRA Section 711 orders. Court Doc. 119 at 5-12.

Plaintiffs respond that the Court should deny BNSF's motion for three principal reasons. Pltfs' Br. in Opposition to BNSF's Mtn. to Dismiss (Court Doc. 138) at 5. First, they argue, BNSF's motion is foreclosed by the Montana Supreme Court's decision in Sunburst Sch. Dist. No. 2 v. Texaco, Inc., 165 P.3d 1079, 1092 (Mont. 2007), which held that no conflict exists between CECRA and common law restoration damages claims such as the ones they assert here. Id. at 5-6.

Second, Plaintiffs argue, a request to review a Section 711 order is not before the Court in this case. They are not asking this Court or any other court to review or modify provisions of the existing Decree or any actions taken by the DEQ under CECRA. Instead, Plaintiffs argue, they are seeking "restoration damages . . . available to them to restore their properties under Sunburst." Id. at 7-8. The Decree itself, they argue, recognizes individuals' rights to bring their own actions against BNSF and the Decree also does not release BNSF from liability for implementation of the selected remedy. Id.

Third, Plaintiffs argue that no inconsistency exists between their restoration damages claims and CECRA. In support of this proposition, they argue that: (1) the presently-underway remediation plan "is in a

state of flux" and there exists no final remediation plan that would

conflict with the remedies Plaintiffs seek, id. at 8-9; (2) standards for the

DEQ remediation under CECRA are different from those mandated by

law for restoration, which difference demonstrates Plaintiffs' claims for

restoration damages are not the same as DEQ's remediation efforts, id.

at 10-11; (3) BNSF has presented no evidence that Plaintiffs' restoration

plans are "wildly different" from DEQ's remediation plan as BNSF

argues, nor will Plaintiffs' restoration plans interfere with DEQ's

remediation plan, id. at 11; (4) BNSF has made a restoration assessment

but will not disclose it to Plaintiffs, so "[i]t can only be presumed the

plan would be consistent with the Plaintiffs' plan[,]" id. at 12-13; (5)

BNSF cannot show that DEQ would not approve Plaintiffs' restoration

plan, which further demonstrates that Plaintiffs' plan is not in conflict

with DEQ's remediation plan, id. at 13-14; and (6) the federal CERCLA

cases upon which BNSF relies are not applicable where the  Sunburst

decision controls, id. at 14.

     BNSF replies that Plaintiffs' reliance on  Sunburst  is misplaced.

BNSF's Reply (Court Doc. 154) at 3.  In  Sunburst, BNSF argues, "the

defendant argued that a DEQ-led CECRA cleanup forever preempted

7

private plaintiffs from asserting a claim for restoration damages" and the supreme court rejected that argument. Id. The <u>Sunburst</u> decision did not address, however, Section 711(6)'s pre-enforcement review bar. Thus, BNSF argues, <u>Sunburst</u> does not control here. Id. Also, in sum, BNSF argues that Plaintiffs' restoration damages demands improperly seek to review DEQ's Section 711 orders before completion of the cleanup currently underway, id. at 4-7.

III.   <u>STANDARD OF REVIEW</u>

In considering a Rule 12(b)(1) motion to dismiss, the Court is mindful that the party asserting federal court jurisdiction bears the burden of establishing that such jurisdiction exists. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may . . .'" attack the existence of subject matter jurisdiction as a matter of fact. <u>Thornhill Publishing Co. v. General Tel. & Elect.</u>, 594 F.2d 730, 733 (9th Cir. 1979).

In instances such as this, in which BNSF is challenging the fact of the Court's subject matter jurisdiction with respect to restoration damages demands, BNSF "can attack the substance of a complaint's

jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989).  In factual challenges to subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." <u>Thornhill</u>, 594 F.2d at 733 (citation omitted).  Nevertheless, where the jurisdictional and substantive issues "are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983).

## IV.  <u>DISCUSSION</u>

The primary issue before the Court, as framed by BNSF, is whether CECRA's Section 711(6) divests this Court of jurisdiction over Plaintiffs' restoration damages demands because the statute "protects the implementation of a cleanup from lawsuits that might interfere with the cleanup effort."  Court Doc. 154 at 2.  For the reasons that follow, the

Court concludes that Section 711(6) does not divest the Court of subject

matter jurisdiction over Plaintiffs' restoration damages demands and,

therefore, recommends that BNSF's motion be denied.

Section 711(6), which BNSF argues is a "pre-enforcement review

bar," provides:

> (6)  A court has jurisdiction to review an order issued under
> 75-10-707 or this section only in the following actions:
>
> > (a)  an action under 75-10-715 to recover
> > remedial action costs or penalties or for
> > contribution;
> > (b)  an action to enforce an order issued under
> > 75-10-707 or this section;
> > (c)  an action to recover a civil penalty for
> > violation of or failure to comply with an
> > order issued under 75-10-707 or this section;
> > or
> > (d)  an action by a person to whom an order has
> > been issued to determine the validity of the
> > order, only if the person has been in
> > compliance and continues in compliance with
> > the order pending a decision of the court.

MCA § 75-10-711(6).

The Montana Supreme Court has not expressly addressed Section

711(6).  In this Court's opinion, however, the supreme court in Sunburst

spoke of CECRA's relationship to common law claims in terms

sufficiently expansive to encompass the question at hand.

10

In <u>Sunburst</u>, a school district and approximately ninety adjoining

private property owners sued Texaco for damages after benzene

migrated onto their properties from Texaco's nearby refinery.  165 P.3d

at 1083.  Plaintiffs prevailed at trial.  Texaco appealed.  <u>Id</u>.

The supreme court addressed, among other issues:  "Whether the

Comprehensive Environmental Cleanup and Responsibility Act

(CECRA) preempts a common law action for restoration damages."  <u>Id</u>.

Texaco argued that a restoration damages award "would interfere with

CECRA's delegation to DEQ to determine the standard for cleanup and

to determine any plan for remediation."  <u>Id</u>. at 1090 (citing MCA § 75-10-

721).

The supreme court began its analysis by generally reciting

applicable Montana law:

> The common law applies in Montana whenever it does not
> conflict with a statute.  A presumption exists against
> statutory preemption of common law claims.  A statute does
> not take away common law claims except to the extent that
> the statute expressly or by necessary implication declares.

<u>Id</u>. at 1091 (citations omitted).

The supreme court first addressed whether CECRA expressly

preempts common law claims.  In noting that "CECRA does not

11

explicitly prohibit common law claims[,]" the supreme court declined to

"add to CECRA a prohibition against common law claims that seek to

recover restoration damages where the legislature has declined to do so."

Id.

The supreme court next addressed Texaco's contention that

CECRA preempts common law claims "by necessary implication[.]"  Id.

In rejecting this contention, the supreme court noted its agreement with

the proposition that "CECRA's focus on cost effectiveness and limits on

health-based standards differ from the factors to be considered in

assessing damages under the common law."  Id. at 1092.  The supreme

court concluded by holding:

> Nothing in CECRA preempts a common law claim that seeks
> to recover restoration damages to remediate contamination
> beyond that statute's health-based standards.  We conclude
> that no conflict exists between DEQ's supervisory role under
> CECRA and restoration damages awarded under the common
> law.  We further conclude that nothing in CECRA precludes a
> common law claim by necessary implication.

Id.

The Court concludes that  Sunburst controls here.  The Montana

Supreme Court's explicit determination that "[n]othing in CECRA

preempts a common law claim that seeks to recover restoration damages

to remediate contamination beyond the statute's health-based standards" is determinative of the motion at hand.  In expressly holding that nothing in CECRA preempts a claim under Montana common law for restoration damages, the supreme court foreclosed BNSF's argument that the statute divests this Court of subject matter jurisdiction over Plaintiffs' claims for restoration damages.  Although BNSF argues that Sunburst did not address specifically Section 711(6), this Court cannot ignore the supreme court's broadly sweeping pronouncement where jurisdiction here is based on diversity and this Court must follow the substantive law of Montana.  Erie Ry. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

The Court has reviewed the federal cases cited by BNSF which have held that section 113(h) of CERCLA, 42 U.S.C. § 9613(h), withholds federal jurisdiction to review citizen suits and other actions that challenge ongoing CERCLA cleanup actions.  See, e.g., McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325, 331 (9th Cir. 2009).  If CERCLA applied here, the outcome perhaps would be different.  But because CECRA controls, and the Montana Supreme Court has declared that "[n]othing in CECRA preempts a common law claim that seeks to

recover restoration damages," the Court here need not refer to decisions under CERCLA for guidance.

Two additional factors bolster the Court's conclusion.  First, Plaintiffs maintain that they do not seek "review" of DEQ's remediation plan or any Section 711(6) order as BNSF argues.  Rather, relevant to the motion at hand, Plaintiffs argue that they seek only "compensatory restoration damages" to the extent that they are available under Sunburst.  Court Doc. 138 at 7.  On the current record, the factual parameters of any planned or intended property remediation or restoration are not sufficiently established to permit a ruling, as a matter of law, that Section 711(6) operates to divest this Court of subject matter jurisdiction.  Dismissal of Plaintiffs' restoration damages claims for the Court's lack of jurisdiction, therefore, would be premature and inappropriate.  For this reason, too, BNSF's motion should be denied.

Second, the record also does not support the notion that DEQ's role at the Livingston site is as determinative of this Court's subject matter jurisdiction as BNSF urges here.  As Judge Strong observed in his April 30, 2008, Findings and Recommendation in  State of Montana v. BNSF Railway Company,:

14

> The Montana DEQ . . . plays a pivotal role here.  It sued to obtain and must oversee the cleanup.  Yet the DEQ sees no necessary conflict between this Court's jurisdiction and the Intervenors' restoration damages action in state court.  The Court as well does not see any direct current or necessary future conflict.

CV-88-141-H-DWM-RKS, Court Doc. 137 at 9 (attached as Ex. 1 to Pltfs' Br. (Court Doc. 138-1 at 9)).[5]

This previous determination further supports the Court's conclusion herein.  Having concluded that BNSF's motion fails for the reasons stated, the Court does not address the parties' other arguments.

V.   <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that BNSF's motions for partial dismissal under Rules 12(b)(1) and 12(h)(3) (in CV 07-147-BLG-RFC-CSO, Court Doc. 118; in CV 08-30-BLG-RFC-CSO, Court Doc. 93; and in CV 07-148-BLG-RFC-CSO, Court Doc. 90) be DENIED.

Also, IT IS ORDERED that the Clerk shall serve a copy of these Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, under to 28 U.S.C. § 636, any

---

[5]Judge Molloy adopted in full Judge Strong's Findings and Recommendations in an Order filed July 8, 2008.  CV-88-141-H-DWM-RKS, Court Doc. 140 at 2.

objections must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 18th day of December, 2009.

/s/ Carolyn S. Ostby
United States Magistrate Judge